### CHATTANOOGA MEDICINE CO. v. THEDFORD et al.

(Circuit Court of Appeals, Fifth Circuit. December 31, 1894.)

No. 255.

TRADE NAMES—INFRINGEMENT—SALE OF RIGHTS IN FIRM NAME.

M. A. Thedford, being engaged with others, under the firm name of M. A. Thedford & Co., in the manufacture and sale of "Simmons' Liver Medicine," sold to his partners all his rights therein, and bound himself not to engage in manufacturing the said medicine "under any name or style." Afterwards he formed a partnership under the firm name of M. A. Thedford Medicine Company, which made and sold a compound called "M. A. Thedford's Liver Invigorator," which they placed upon the market in wrappers and packages and with symbols and literature calculated to induce the belief that it was the "Simmons' Liver Medicine." *Held*, that this was a clear infringement upon the rights of his transferees, and that it was no defense that the latter had discontinued the use of the word "Simmons" and called their medicine "M. A. Thedford & Co.'s Original and Only Genuine Liver Medicine, or Black Draught." 58 Fed. 347, reversed.

Appeal from the Circuit Court of the United States for the Northern District of Georgia.

This was a bill in equity by the Chattanooga Medicine Company against M. A. Thedford and W. J. Satterfield to enjoin the use of a trade name. The circuit court denied a preliminary injunction (49 Fed. 949), and afterwards entered a decree for defendants. 58 Fed. 347. Complainant thereupon took this appeal.

John L. Hopkins and William Henry Browne, for appellant.
N. J. Hammond, for appellees.

Before PARDEE and McCORMICK, Circuit Judges, and BRUCE, District Judge.

BRUCE, District Judge. The case made by the bill, amendments, answer of respondents, and evidence in the cause is substantially that the complainant, the Chattanooga Medicine Company, a cor-

poration organized under the laws of the state of Tennessee, brings its bill against Miles A. Thedford and W. J. Satterfield, citizens of the state of Georgia, and says: That, prior to the year 1856, one Dr. A. Q. Simmons discovered a medicine which he made, and which become widely known as a liver medicine, and cure for diseases of the liver. That, in the year 1856, Dr. Simmons granted to his son-in-law, John H. Thedford, the right to make his medicine, and to use his (Simmons') name in advertising and selling it. That, in the year 1872, John H. Thedford sold and transferred to Miles A. Thedford all his right and title to make and sell the medicine. In the latter part of the year 1872, Miles A. Thedford engaged in manufacturing and selling the medicine in Chattanooga, Tenn., under the firm name of M. A. Thedford & Co., which name became known as the name of the manufacturers of Simmons' Liver Medicine, and this firm was engaged in manufacturing, advertising, and selling it to the public. On the 14th day of October, 1875, M. A. Thedford sold and transferred to William G. Smith and Charles McKnight a two-thirds interest in his right to manufacture and sell the medicine for $2,200. This contract is in writing, and states that the right transferred is the "right, title, and interest to compound, mix, make, manufacture, advertise, and sell what is known as 'Simmons' Liver Medicine,' the said right descending to me through my father, J. H. Thedford, who is the son-in-law, and received the right from his father-in-law, A. Q. Simmons, now deceased, and was the original inventor of said medicine." Miles A. Thedford, William G. Smith, and Charles McKnight carried on the business of manufacturing and selling the medicine in Chattanooga, Tenn., under the firm name of M. A. Thedford & Co. Their chief office was in Chattanooga, and on the 22d day of November, 1876, they were engaged in this business, and had a stock of goods amounting to $5,329.05; and book accounts, $8,056.97; and plates, electrotypes, and lithographing stones and printed matter used in advertising the medicine, bearing the signature of M. A. Thedford & Co. On the 22d day of November, 1876, M. A. Thedford sold his one-third interest in the business and right to manufacture and sell the Simmons' Medicine to Z. E. Patton, and was paid for it in a tract of land of 500 acres, more or less, in Caroosa county, Ga. This transfer is in writing, and states that:

"I hereby transfer and convey to said Z. E. Patton all and every of my rights, title, and interest whatsoever, that I have been and am or may hereafter become possessed of, in the right to manufacture, make, advertise, and sell the said Simmons' Liver Medicine; and I hereby bind myself not to engage in the business of manufacturing or selling the said medicine under any name or style, or to become interested in the manufacture through any other person whatsoever, except that I should become the owner of any part or interest sold to Smith, McKnight, or Patton in the manufacture or sale of said medicine, under the firm name and style of M. A. Thedford & Co. * * * "

In 1879 the complainant company succeeded to the right of Smith, McKnight, and Patton, and has ever since been engaged in manufacturing, advertising, and selling the medicine. The defendants in their answer say that they have formed a partnership under the firm name of M. A. Thedford Medicine Company, and that they have

commenced to make, advertise, and sell "T. L. I.," which is "M. A. Thedford's Liver Invigorator," and they say the name M. A. Thedford is worth to them not less than the sum of $10,000. The evidence shows that "T. L. I.," "M. A. Thedford's Liver Invigorator," is put upon the market in wrappers and packages, with symbols and literature which are calculated to induce the belief on the part of the public that it is the Simmons' Liver Medicine manufactured by the M. A. Thedford Medicine Company, and the literature makes prominent that M. A. Thedford is the grandson of Dr. A. Q. Simmons.

Upon the face of it, it would seem to be a clear attempt upon the part of defendants to use and avail themselves of the same thing that M. A. Thedford sold first, two-thirds of it to Smith and McKnight, and afterwards the other third to Z. E. Patton, November 22, 1876. These sales, in terms, indicate a clear purpose on the part of Thedford to go out of the business, and to give his successors in interest a clear field, not only to the right to manufacture, advertise, and sell Simmons' Liver Medicine, but to the exclusive use of the name "Thedford & Co." in the carrying on of their business. In the very nature of things, such a business as the defendants propose, with the means of advertising they are using, must operate an infringement upon the right of the plaintiff.

There is this suggestion: That the language used in the transfer to Patton is limited to the making and selling of Simmons' Liver Medicine, calling it by that name, and that the use which the complainant company is authorized to make of the name of "M. A. Thedford & Co." is likewise to be limited to the making, advertising, and selling of Simmons' Liver Medicine, and that afterwards the predecessors of the complainant company discontinued the use of the word "Simmons," and called their medicine "M. A. Thedford & Co.'s Original and Only Genuine Liver Medicine, or Black Draught," and that this change in the name and literature of the complainant company gave the defendant the right to do what he now claims. We think this view of the terms of the transfer is too narrow, and the evidence does not show that the complainant company abandoned the right to make Simmons' Liver Medicine in one form or other, but it shows the contrary. The cause of this change may be found in the Zeiler suit, brought by a rival of the predecessor of the plaintiff company in the circuit court of the United States for the Eastern district of Tennessee, with the merits of which we have nothing to do here; but it is in the record, and perhaps furnishes a reason for the change which was made in the name of the medicine which the plaintiff company was engaged in manufacturing and selling; but it is not clear here that change could inure to the benefit of the defendants, in the absence of proof showing an abandonment by the complainant company of the right to make and sell Simmons' Liver Medicine. We do not deem it necessary to enter into any inquiry as to the ingredients of Simmons' Liver Medicine, or what his formula actually was, if he had any, or how the complainant's medicine called "M. A. Thedford & Company's Original and Only Genuine Liver Medicine, or Black Draught," differed, if at all, from Simmons' Liver Medicine, or whether either of the medi-

cines are intrinsically valuable or not.    However that may be, the manufacture and sale of the medicine seems to have become the basis of a valuable business, and the question here is as to the right to manufacture it and the manner in which it shall be placed upon the market; and, as between the parties to this suit, we think the evidence shows that the defendants, in clear violation of the contract of M. A. Thedford, are infringing upon plaintiff's rights, and are subjecting the plaintiff to an unjust and unfair competition in business.    The decree of the circuit court is reversed, and the cause remanded, with instructions to issue an injunction, and refer the cause to a master to take account of damages; and it is so ordered.